1842.

CHAMPLIN
*v.*
CHAMPLIN.

</div>

---

CHAMPLIN *v.* CHAMPLIN and others.

---

Trustees had full power to sell real estate. The will directed an investment until division. All parties in interest agreed to a present sale, save one. *Held,* that he could not check a sale, where it was unaccompanied by sinister purpose and bad faith of the trustees.

---

IN this case an order had been granted for the defendants to show cause why an injunction should not issue.

The bill was filed by John Depeyster Champlin, as one of the remaindermen entitled under the will of his grandmother, Elizabeth Depeyster, deceased. This will embraced valuable residuary real estate; and it may be well to add here an extract from the will, showing the powers given to the executors and trustees and the period and mode of distribution : " I give, devise and bequeath all the rest and residue of my freehold estate, lands, tenements and appurtenances which I am now possessed of or entitled to or which I may be possessed of or entitled to at the time of my death, to my executrix and trustee Elizabeth Schuyler Champlin, and to my executors and trustees William G. Jones, John Clark and Elbert Herring, the survivor and survivors of them, and the heirs, executors and administrators of such survivor for ever. To have and to hold the same to my said executors and trustees the survivors and survivor of them, and the heirs, executors and administrators of such survivor, upon trust that they faithfully follow the instructions and perform the directions in this my last will. And I desire and direct that my before mentioned

<div style="text-align:right">

*Jan.* 24.
1842.

*Trustee.*
*Sale.*

</div>

executors and trustees, Elizabeth Schuyler Champlin, William G. Jones, John Clark and Elbert Herring and the survivors and survivor of them sell at public or private sale and give sufficient deeds of release to the purchaser or purchasers thereof, lease, mortgage or otherwise dispose of all my freehold estate, except as before mentioned, lands, tenements and appurtenances or any proportion thereof. I desire that they vest the proceeds in such security as to them shall seem expedient. And after payment of all my just debts and funeral expenses, testamentary charges, taxes, assessments and all expenses incident to the settling and managing of my estate, I desire and direct my before mentioned executors and trustees, the survivors and survivor of them, and the heirs, executors and administrators of such survivor, to give to my daughter Elizabeth Schuyler Champlin, during her natural life, the rent or income of all my freehold estate (except as before mentioned) lands, tenements and appurtenances that they may deem inexpedient to sell ; and the interest of the proceeds of that part thereof which they shall sell, in whatever it may be invested, deducting, however, all the expenses to which my said executors and trustees the survivors and survivor of them and the heirs, executors and administrators of such survivor` may be subjected in relation to my said estate and subject also to the following provision : that in case my son John Depeyster shall have wasted or spent the property left him by his father, my said executors and trustees, the survivors and survivor of them, and the heirs, executors and administrators of such survivor, out of the rent or income of my freehold estate or the interest of the proceeds thereof, shall provide him with suitable board and clothing, not however to exceed annually the sum of two hundred dollars. And in case my daughter Elizabeth Schuyler Champlin shall die before her youngest child shall have attained the age of twenty-one years, then and in that case I desire and direct my said executors and trustees, the survivors and survivor of them and the heirs, executors and administrators of such survivor, to apply the income and interest of all my estate, real and personal, (that would according to this my will have belonged to my daughter Elizabeth Schuyler Champlin) towards the education and maintenance of her children until her youngest child shall have arrived at the age of twenty-one years.

And my will further is, that at and immediately after the death of my daughter Elizabeth Schuyler Champlin, if her youngest child shall be twenty-one years of age and if not twenty-one years of age then as soon as her youngest child shall be twenty-one years of age, all my estate, real and personal, shall be divided by my said executors and trustees, the survivors and survivor of them, and the heirs, executors and administrators of such survivor equally share and share alike among all the children of my daughters Margaret Depeyster and Elizabeth Schuyler Champlin. And my will further is that if any or either of the children of my daughters Margaret Depeyster and Elizabeth Schuyler Champlin should be then dead leaving lawful issue, such issue shall represent the parent and take such share as the parent would have been entitled to; and in case all the children of either of my said daughters shall die without lawful issue and before reaching the age of twenty-one, then their part and share of my estate shall go to and belong to the surviving children or child of my other daughter and the lawful issue of such of her children as may have died—such to represent the parent and take such share as the parent would have been entitled to. It is, however, my express will that my estate, at all events, during the natural life of my son John Depeyster, shall be subject to the payment of the annual sum of two hundred dollars for board and clothing, in case he shall have wasted or spent the property which he inherited from his father. And lastly, I do hereby nominate and appoint my daughter Elizabeth Schuyler Champlin executrix and trustee, my nephews William G. Jones and Elbert Herring, and my friend John Clark executors and trustees of this my last will and testament."

The bill showed that some sales had taken place, which had not been properly accounted for, and charged that the amounts received by the executors and trustees were sufficient to defray the expenses of the estate; and that the residue of the premises ought to remain unsold " until the occurrence of the events provided for by the said will for the distribution of the same among the heirs and devisees of the said estate :" but that, in order to entice and allure the complainant into consenting to a sale of the whole of the residue of the property, the parties in interest had combined with the executors and trus-

tees by executing an instrument agreeing to such a sale, specifying prices which were put high, in order the easier to get him to sign and thereby consent to a sale. And the complainant alleged and charged, that it was the design and intention of the said co-devisees to speculate on the said premises by availing themselves of the unfavorable aspect and situation of the times by purchasing the said premises at low and insufficient sums so as to extinguish the said trust estate created by the said will and acquire a title to the same to themselves by such factitious purchase and sale to the great prejudice and detriment of the complainant and his rights in the premises. Also that he had refused to sign the agreement for sale, and yet, for all this, the parties persisted in going on with it and advertised the property for the thirteenth day of January then instant, (1842.) The complainant insisted that there was no necessity or emergency existing for a sale ; and that it was most for the advantage of the estate and those interested therein that the premises should remain unsold, at least, in the present unfavorable times. *Prayer :* for an account ; and an injunction to stay the sale.

The present motion was met by affidavits. It will be sufficient to extract from the deposition made by the complainant's mother, Mrs. Elizabeth Champlin, the tenant for life :—" that the individuals interested in the property or proceeds devised to the trustees, subject to the rights of this deponent who is entitled to the income during her life, are ten in number, of whom seven are her own children, including the complainant, and three are the children of a deceased sister ; that, in the course of last summer, she was applied to by them and, as she believes, by all of them, either directly or indirectly, to consent to a sale of said premises and therein she believed that all of her own children, including complainant and the children of her sister, urged her to take that course, saying, at the time, that many of them were in need of their share of the proceeds, that to receive it now would be of much greater service than at a future unascertained period ; and this deponent assented to their request ; that, in making arrangements for a sale, it was suggested a fixed sum should be named as the amount which she should receive in lieu of her life estate ; that different sums were mentioned between the amount finally fixed

1842.

CHAMPLIN
v.
CHAMPLIN.

on and the sum of fifteen thousand dollars ; that this deponent finally consented to receive the sum of thirteen thousand dollars in full satisfaction of her entire interest in the estate devised to the trustees, not because that was the value of the interest, but because the property was to be distributed among her own children and the children of her deceased sister ; and although she believed that her interest was much greater, she was willing to have all the children receive the proceeds of the property on those terms, and an agreement was drawn up among the children, substantially set forth in the bill of complaint and signed by all, except the complainant. This deponent further saith, she had understood that her son, John Depeyster Champlin, had parted with his interest in the whole of the estate, but had subsequently made some arrangement, with the particulars whereof she was unacquainted, whereby he expected to be able to obtain back his interest on the payment of a sum of money and which she understood was five thousand dollars or thereabouts ; and that he was making some negotiation to effect that object ; that this deponent, notwithstanding the unkind treatment which she had received from her son for years back, was desirous, if it could be done, that he should complete the arrangement whereby he might again become the owner of his entire share and participate in the benefits which would arise to him in consequence of the adjustment of her interest which she had consented to make with the children ; that the plan of a sale was the subject of conversation early during the last year, and the efforts of all the children seemed to be directed to cause the property to produce as great a price as possible ; a sale at public auction was determined upon to take place some time in December last ; that this deponent and the children, having understood from a letter that her said son was anxious to have the sale delayed for a short time until he could complete his arrangements so as to represent his entire interest and expressing therein an entire willingness to become a party to the arrangement with this deponent, the publication of the notice of sale was postponed at his request and, at the time fixed by him, a further postponement was granted at his request ; that the usual season for selling property in this city being about to arrive, the same was, after the expiration of the last postpone-

ment, advertised for sale in four of the daily newspapers for the thirteenth of January instant, maps were prepared of the property containing the day, hour and place of sale and posted in conspicuous places through the city and the utmost publicity given to secure the attendance of bidders and terms of credit were offered to induce high prices. This deponent further saith, as she is informed and believes, that, at the appointed time of sale and when the biddings were about opening, printed copies of an order, purporting to have been made in this case on the thirteenth instant, were distributed in great numbers among the bidders, the effect of which was sought to be counteracted by a statement made at the sale that the said order was not intended to interfere with the sale in any way whatsoever. This deponent further saith, that the said sale took place and all the property was sold, as she is informed and verily believes, and most of it to strangers ; that she understood from some of her children that they might be willing to buy a lot each if the property sold at certain prices beyond that at which they were willing to purchase, although she has understood that some did purchase, to the extent of such purchase, and that each acted for his sole benefit. This deponent further saith, she has no desire that the share of the estate which constituted the interest of the complainant should be affected by the arrangement made with the other children, unless the said complainant is desirous that it should be so, on the contrary she is willing that the proceeds of such share should be invested in proper security, and she receive the interest thereon during her life ; and she is willing to have such portion of the mortgage security to be taken on the said sale, as may be necessary, set apart for that purpose."

Mr. *Mackay* and Mr. *C. W. Sandford*, for the complainant.

Mr. *Selden* and Mr. *H. W. Warner*, for the defendants.

*Feb.* 1.     THE VICE-CHANCELLOR :—The sales of the property in question are made by the authority of the will of Elizabeth Depeyster, which devises the estate to the executors and constitutes them trustees to sell and eventually to divide the proceeds among her grandchildren. The power to sell and exe-

cute valid conveyances to purchasers is absolute and plenary. The time fixed by the will, when the power must be exercised, is the death of Mrs. Champlin, to whom an estate for life is given, unless she should happen to die before her youngest child arrives at lawful age, in which case the arrival at age of her youngest child is the period fixed upon when sales, with a view to a final division of the estate, must be made. But the will does not confine the exercise of the power to the time fixed upon for a division of the estate among those entitled in remainder—it may be exercised before that period.

The will, indeed, expressly directs a sale of all or any portion for the purpose of first paying debts, funeral and testamentary charges, taxes and assessments and of their investing the proceeds. To accomplish these purposes, it might be necessary to make some sales immediately after the death of the testatrix ; and the will certainly contemplates that the trustees may proceed, from time to time, and make sales according to their best judgment, since it directs investments in such securities as the trustees may deem expedient and the interest thereof to be paid to her daughter, Mrs. Champlin, for life, as well as the rents and income of such of the real estate as they may deem it inexpedient to sell. And in pursuance of this unrestricted and comprehensive power granted by the will, the trustees have gone on, as it appears, from time to time, and made sales to a very considerable amount, without their authority being questioned or the title of purchasers in the least doubted. Hence, I have no difficulty in coming to the conclusion that it is competent for the trustees, at this time, to make valid sales of the remaining property held under the trusts of the will, though the period fixed thereby for a final division has not yet arrived.

It is a legal right and authority they possess ; and this court will not interfere with them in the exercise of it, unless satisfied they are proceeding from sinister motives and in bad faith towards the remainder-men.

The complainant, who is one of those entitled to a share in remainder, does, indeed, allege in his bill, mismanagement of the trust estate, waste and loss and improper expenditure of the proceeds of previous sales, and that there is no account of the manner in which the funds have been invested; but all

VOL. III.—73

these charges of complaint are met and satisfactorily refuted by the affidavits read in opposition to the bill. It is true that the sales of the whole residue of the trust estate now being made and consummated are not made for the purpose of investing the proceeds as directed by the will, but, for the purpose of giving to Mrs. Champlin a gross sum in lieu of her life interest and of dividing the balance among those entitled in remainder, under an agreement which all parties, save the complainant, have entered into with her. This agreement is objected to ; and the complainant alleges that it is a mere plan or scheme set on foot to cover the artful designs of the parties in bringing about a collusive sale of the property at this time when the price of lots is greatly depressed, very much to the injury of the complainant and to the prejudice of his rights. The inducements for entering into this agreement and its object are, however, fully explained in the affidavits ; and it is shown to have been entered into in good faith, for the purpose of bringing about a final division of the estate, on terms very favorable to the remainder-men. The complainant was at liberty to dissent from this agreement and he did so ; but his refusal cannot take from the trustees their power or impair their right to make the sales at this time, nor deprive the other parties of the privilege of making such an agreement as they may think proper with Mrs. Champlin to extinguish her life interest in their respective shares of the proceeds.

Unless the complainant shall choose to make some similar arrangement, the trustees must invest the amount of his share as directed by the will. If he can show that the money will be unsafe or the investment insecure in their hands, this court will interfere on a proper application to protect the fund. As the sales made on the thirteenth day of January, one thousand eight hundred and forty-two, are shown to have been fairly conducted and the lots struck off at prices with which all the other parties in interest are satisfied, no good reason exists why the court should interfere to disturb the sales.

The application for an injunction is denied; but costs may abide the event of the suit.